1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JEREMIAH HANKINS,                           No.  2:24-cv-0150 TLN SCR P

12                    Plaintiff,

13         v.                                      ORDER

14    SACRAMENTO COUNTY, et al.,

15                    Defendants.

16

17         Plaintiff is a civil detainee proceeding pro se with a civil rights action under 42 U.S.C. §

18    1983.  Before the court are plaintiff's motions to appoint counsel (ECF Nos. 14 and 15) and first

19    amended complaint ("FAC") for screening.  (ECF No. 16.)  For the reasons described below, the

20    undersigned denies plaintiff's motions to appoint counsel and finds plaintiff's FAC states a

21    potentially cognizable Fourteenth Amendment medical care claim against defendants Dr.

22    Williams, Dr. Sokolov, and Dr. John Doe, but no other cognizable claims.  Plaintiff will be given

23    the option of proceeding immediately on his cognizable claim or filing an amended complaint.

24              **STATUTORY SCREENING OF PRISONER COMPLAINTS**

25         The court is required to screen complaints brought by prisoners seeking relief against "a

26    governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In

27    performing this screening function, the court must dismiss any claim that "(1) is frivolous,

28    malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

1  from a defendant who is immune from such relief." Id. § 1915A(b).  A claim is legally frivolous

2  when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325

3  (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless

4  legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical

5  inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and

6  factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

7       In order to avoid dismissal for failure to state a claim a complaint must contain more than

8  "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

9  of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,

10  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

11  statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the

12  court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

13  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14  inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When

15  considering whether a complaint states a claim, the court must accept the allegations as true,

16  Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most

17  favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

18                    **FACTUAL ALLEGATIONS OF THE FAC**

19       Plaintiff was at all relevant times a civil detainee in Sacramento County Jail.  (ECF No. 16

20  at 2.)  His FAC names as defendants (1) Sacramento County; (2) Dr. Williams, Jail Psych

21  Services ("JPS") psychiatrist; (3) Dr. Sokolov, JPS psychiatrist; (3) John Doe, JPS supervisor; (4)

22  Dr. John Doe, primary care physician; (5) John Doe, mailroom supervisor; and (6) mailroom

23  deputies, John Does 1-10.  (Id. at 2-3.)  The FAC's allegations cover plaintiff's prescription for

24  the anti-psychotic Zyprexa and interference with his legal mail.

25  **I.     Allegations Concerning Zyprexa Prescription**

26       Dr. Williams prescribed plaintiff the anti-psychotic Zyprexa around 2015.  (ECF No. 16 at

27  4.)  Zyprexa has an F.D.A. "black box" warning because it causes diabetes, prolactin-induced

28  gynecomastia/breast enlargement in both men and women, and other side effects.  (Id.)  Plaintiff

1    told Dr. Williams that he did not want to take any anti-psychotics that cause gynecomastia. (Id.)

2    Dr. Williams told plaintiff that the only side effect was "dry mouth." (Id. at 5.) Defendant Dr.

3    Sokolov also met with plaintiff in 2015 before Dr. Williams did. (ECF 16 at 5.) Dr. Sokolov

4    volunteered to place plaintiff on Zyprexa without giving him a choice of safer drugs, and would

5    not answer plaintiff's question of "what [are] the side effects to Zyprexa?" (Id. at 5.) Defendant

6    Dr. Sokolov ignored the question, walked away, and never said the side effects to Zyprexa. (Id.)

7         Because Zyprexa causes diabetes and elevated prolactin levels, the standard practice for

8    psychiatrists is to order blood lab work quarterly. (ECF No. 16 at 5.) Over the next 4 ½ to 5

9    years, neither defendant Dr. Williams nor defendant Dr. Sokolov ordered any blood draw for

10   plaintiff to monitor his prolactin or blood sugar levels. (Id. at 6.) Instead, defendants Williams

11   and Sokolov regularly increased plaintiff's dosage over that time. (Id.)

12        On or about 2017, plaintiff wrote to "medical" complaining about bilateral swelling and

13   pain in his nipples and breasts due to Zyprexa. (ECF No. 16 at 6.) Dr. John Doe, primary care

14   physician, sent plaintiff to an outpatient hospital for a mammogram. (Id.) The test confirmed that

15   plaintiff had developed bilateral gynecomastia consistent with the side effects of Zyprexa that

16   neither defendant Dr. Williams nor defendant Dr. Sokolov provided when plaintiff asked. (Id.)

17   Despite the positive mammogram and plaintiff submitting multiple medical kites complaining of

18   constant pain in his breasts, Dr. Doe never provided any follow-up treatment. (Id.)

19        On or about August 2019, plaintiff began to experience swelling in his legs, which is

20   indicia of diabetes. (ECF No. 16 at 7.) Sacramento County Jail medical staff drew plaintiff's

21   blood, and the test indicated that plaintiff did have Type 2 Diabetes. (Id.)

22       **II.**    **Allegations Concerning Legal Mail**

23        Plaintiff alleges that in 2021, Sacramento County Jail deputies were alerted that plaintiff

24   was going to sue the jail by plaintiff stating more than seven times in grievances that he was

25   going to file a lawsuit. (ECF No. 16 at 7.) Plaintiff also stated that he was in contact with an

26   attorney regarding filing a lawsuit against Sacramento County Jail. Around November –

27   December 2021, plaintiff was waiting on a response from an attorney and shocked to see his prior

28   legal mail opened and read by Sacramento County Jail deputies. (Id.)

1  Per Sacramento County Jail protocol, when any detainee gives a deputy an envelope

2  marked with "legal mail" tag on the front, that deputy verifies that no contraband is inside and

3  then gives it back to the detainee to seal.  (ECF No. 16 at 7.)  Then the deputy signs his initials on

4  the lip of the envelope so that mailroom deputies don't have to inspect it.  (Id. at 7-8.)  Also under

5  Sacramento County Jail policy, no deputy or jail staff is authorized to open a detainee's incoming

6  "legal mail" outside of the detainee's presence.  That includes "return to sender" legal mail that is

7  unopened and already been inspected when it went in the outgoing mail before with a deputy's

8  signature on the back lip of the envelope.  (Id. at 8.)

9  **III.    Claims for Relief**

10  Plaintiff's FAC states four causes of action: (1) violation of plaintiff's right to adequate

11  medical care under the Fourteenth Amendment; (2) violation of plaintiff's right to access the

12  courts under the First Amendment; (3) state law medical negligence; and (4) state law "serious

13  emotional distress due to negligence."  (ECF No. 16 at 8-20.)  The FAC is captioned as a

14  "Complaint for Money Damages and Injunction" (see id. at 1) but does not contain a specific

15  prayer for relief.[1]

16  **LEGAL STANDARDS**

17  **I.    42 U.S.C. § 1983**

18  A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights,

19  privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

20  including a municipality, acting under the color of state law.  42 U.S.C. § 1983.  To state a claim

21  under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law

22  (2) deprived plaintiff of rights secured by the Constitution or federal statutes.  Benavidez v.

23  County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

24  Municipalities cannot be held vicariously liable under § 1983 for the actions of their

25  ---
[1] Liberally construing the FAC, the court infers from its caption and clearly identified individual

26  capacity claims (see ECF No. 16 at 2-3) that plaintiff seeks monetary damages.  Thus, for
screening purposes, the court will not dismiss the FAC for plaintiff's failure to request specific

27  relief.  See Massey v. Banning Unified Sch. Dist., 256 F. Supp. 2d 1090, 1092 (C.D. Cal. 2003)
(stating that an improper request for relief is not grounds for dismissal under Rule 12(b)(6) "as

28  long as the court can ascertain from the face of the complaint that some relief can be granted")

1    employees. Monell v. Dep't of Social Services, 436 U.S. 585 at 691, 694 (1978). "Instead, it is

2    when execution of a government's policy or custom, whether made by its lawmakers or by those

3    whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

4    government as an entity is responsible under § 1983." Id. at 694. Municipalities are considered

5    "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional

6    deprivation. Monell, 436 U.S. 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178,

7    1185 (9th Cir. 2006).

8        To properly plead a Monell claim based on an unconstitutional custom, practice, or policy,

9    plaintiff must show that the government "had a deliberate policy, custom, or practice that was the

10   moving force behind the constitutional violation [plaintiff] suffered." AE ex rel. Hernandez v.

11   County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (quotation marks and citation omitted).

12   Plaintiff must also show that the policy or custom of the government "reflects deliberate

13   indifference" to plaintiff's constitutional rights. Castro v. County of Los Angeles, 833 F.3d 1060,

14   1073 (9th Cir. 2016) (quotation marks and citation omitted). Unless the challenged policy is in

15   writing, the municipal policy at issue must be the result of a "'longstanding practice or custom

16   which constitutes the standard operating procedure of the local government entity.'" Price v.

17   Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of San Francisco, 308

18   F.3d 968, 984-85 (9th Cir. 2002) (quotation omitted).

19   **II.    Linkage**

20       Section 1983 requires that there be an actual connection or link between the actions of the

21   defendants and the deprivation alleged to have been suffered by plaintiff. See Monell, 436 U.S.

22   at 694; Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection

23   by alleging facts showing: (1) a defendant's "personal involvement in the constitutional

24   deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly

25   refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should

26   have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202,

27   1207-08 (9th Cir. 2011) (quotation marks and citation omitted).

28   /////

5

1

## DISCUSSION

2

### I.    Fourteenth Amendment Inadequate Medical Care

3      Plaintiff's Fourteenth Amendment inadequate medical care claim names defendants Dr.

4  Williams, Dr. Sokolov, JPS supervisor, Dr. John Doe, and Sacramento County.  (ECF No. 16 at

5  8-12.)  When filed by civil detainees, claims of violations of the right to adequate medical care

6  proceed under the Fourteenth amendment and "must be evaluated under an objective deliberate

7  indifference standard."  Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018)

8  (quoting Castro, 833 F.3d at 1070.)  The elements of a civil detainee's Fourteenth Amendment

9  medical care claim are:

10
11
12
13

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

14  Id. at 1125.  "With respect to the third element, the defendant's conduct must be objectively

15  unreasonable, a test that will necessarily turn on the facts and circumstances of each particular

16  case."  Id.  "The mere lack of due care by a state official does not deprive an individual of life,

17  liberty, or property under the Fourteenth Amendment."  Id. (internal quotation omitted).  "Thus,

18  the plaintiff must prove more than negligence but less than subjective intent – something akin to

19  reckless disregard."  (Id. (internal quotation omitted).)

20      Further, the Ninth Circuit has held that "the Fourteenth Amendment substantively protects

21  a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical

22  treatment and to receive sufficient information to exercise those rights intelligently."  Benson v.

23  Terhune, 304 F.3d 874, 884 (9th Cir. 2002) (citations omitted).  In White v. Napolean, which the

24  Ninth Circuit cited favorably in Benson, 304 F.3d at 884, the Third Circuit held that "[p]risoners

25  have a right to such information as is reasonably necessary to make an informed decision to

26  accept or reject proposed [medical] treatment, as well as a reasonable explanation of the viable

27  alternative treatments that can be made available in a prison setting."  897 F.2d 103, 113 (3d Cir.

28  1990).

1    The undersigned finds that plaintiff has stated cognizable Fourteenth Amendment medical

2    care claims against defendants Dr. Williams, Dr. Sokolov, and Dr. John Doe.  Liberally

3    construed, the FAC alleges that each defendant made intentional decisions regarding plaintiff's

4    care that put him at risk of gynecomastia and/or diabetes.  Plaintiff has also alleged sufficient

5    facts to support each defendant's objective unreasonableness in not appreciating those risks.  For

6    Dr. Williams and Dr. Sokolov, the FAC alleges that both failed inform plaintiff of the side effects

7    of Zyprexa despite his repeated requests and increased his Zyprexa dosage over the next 4 ½ to 5

8    years.  Dr. John Doe failed to treat plaintiff's gynecomastia despite alleged knowledge of his

9    positive mammogram.

10    Plaintiff, however, has not plead adequate facts to link defendant JPS Supervisor John

11    Doe to the deprivation of his rights.  Plaintiff alleges only the vague contention that defendant has

12    an "omissive or deficient policy for ensuring that [his] subordinates are adhering to acceptable

13    standards of medical care when prescribing and monitoring the side effects of drugs[.]"  (ECF No.

14    16 at 11.)  Supervisory personnel are generally not liable under § 1983 for the actions of their

15    employees under a respondeat superior theory and therefore, when a named defendant holds a

16    supervisorial position, the plaintiff must show a "sufficient causal connection between the

17    supervisor's wrongful conduct and the constitutional violation."  Starr, 652 F.3d at 1207 (quoting

18    Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).  Plaintiff's vague and conclusory allegations

19    concerning the involvement of JPS Supervisor John Doe in the violations of his civil rights are

20    not sufficient.

21    Finally, plaintiff's policy and custom allegations are too vague and conclusory to maintain

22    a Monell claim against defendant Sacramento County.  Plaintiff alleges only that Sacramento

23    Country violated his civil rights by "acquiescing, ratifying, or condoning a policy or custom of

24    [County Jail] primary care physicians [and psychiatrists] providing medical treatment that is

25    below an acceptable standard of medical care."  (ECF No. 16 at 12.)  The Supreme Court has

26    emphasized that it is not enough for a § 1983 plaintiff merely to identify conduct properly

27    attributable to the municipality.  "The plaintiff must also demonstrate that, through its deliberate

28    conduct, the municipality was the 'moving force' behind the injury alleged."  Board of Comm'rs

7

1  of Bryan Cty. v. Brown, 520 U.S. 397, 404 (1997).  Plaintiff has not alleged any deliberate

2  conduct by the County or other facts that go beyond the respondeat superior theory of liability.

3         Accordingly, the undersigned finds that plaintiff has stated a cognizable Fourteenth

4  Amendment inadequate medical care claim against defendants Dr. Williams, Dr. Sokolov, and

5  Dr. John Doe only.

6         **II.     First Amendment Access to the Courts**

7         Plaintiff's second cause of action alleges defendants John Doe mailroom supervisor and

8  mailroom deputies John Does 1-10 violated his First Amendment rights by "opening and/or

9  reading plaintiff's legal mail in retaliat[ion] against plaintiff for exercising plaintiff's first

10  amendment right to access the courts."  (ECF No. 16 at 12.)

11         Under the First Amendment, prisoners have a right to send and receive mail.  Witherow v.

12  Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam).  Courts have afforded greater protection to

13  legal mail than non-legal mail.  See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).  In the

14  Ninth Circuit, prisoners have a "protected First Amendment interest in having properly marked,

15  confidential legal mail opened only in their presence."  Hayes v. Idaho Corr. Ctr., 849 F.3d 1204,

16  1211 (9th Cir. 2017).  However, only mail from plaintiff's lawyer or prospective lawyer is

17  protected.  See Nordstrom v. Ryan, 762 F.3d 903, 909 (9th Cir. 2014) (describing the right at

18  issue as the right to be free from "prison officials reading mail between a prisoner and his

19  lawyer"); Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996) ("mail from the courts, as

20  contrasted with mail from a prisoner's lawyer, is not legal mail").  As to communication with

21  counsel, a plaintiff need not "'show any actual injury beyond the free speech violation itself to

22  state a constitutional claim.'"  Hayes, 849 F.3d at 1212 (quoting Al-Amin v. Smith, 511 F.3d

23  1317, 1333 (11th Cir. 2008)).

24         A prison's interference with legal mail may also violate an inmate's right of access to the

25  courts, which is protected by the First Amendment's right to petition the government and the due

26  process clause of the Fourteenth Amendment.  See Snyder v. Nolen, 380 F.3d 279, 290-291 (7th

27  Cir. 2004) (discussing the development of cases concerning a prisoner's right of access to the

28  courts).  Prison officials may not actively interfere with an inmate's right to litigate.  Silva v.

1  <u>Vittorio</u>, 658 F.3d 1090, 1103 (9th Cir. 2011), <u>overruled on other grounds</u> by <u>Richey v. Dahne</u>,

2  807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  To state a claim for the denial of access to the courts, a

3  plaintiff must allege he suffered an actual injury, which is prejudice with respect to contemplated

4  or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous

5  claim.  <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996).

6         Plaintiff's FAC lacks adequate linkage to state a cognizable First Amendment claim.

7  Plaintiff alleges that John Doe mailroom supervisor and John Does 1-10 are responsible for

8  "inspecting and distributing mail at [Sacramento County Jail]" (ECF No. 16 at 3) but states no

9  facts connecting them to the opening or reading of his own mail.  "Whether a defendant is named

10  or has been designated as a 'John Doe,' Plaintiff must tie that defendant's actions to the specific

11  harms alleged to have been caused to Plaintiff."  <u>Zepeda v. Sullivan</u>, No. 1:06-cv-1391 AWI GSA

12  PC, 2009 WL 1288235, at *3 (E.D. Cal. May 7, 2009).  To the extent plaintiff's claim is premised

13  on a denial of access to the courts, plaintiff has not stated an actual injury with respect to any

14  planned or existing litigation (e.g., missing a filing deadline).

15        The court will give plaintiff the option of amending to explain the Doe defendants'

16  alleged involvement in the opening and reading of his legal mail.  To adequately link the Doe

17  defendants to his mail access claim, "Plaintiff shall either name the defendants involved or list the

18  Doe defendants involved and describe what each did to violate his rights.  If Plaintiff can only list

19  these defendants as John Doe, Plaintiff should allege specific acts that each Doe defendant did,

20  such as 'John Doe 1 did X' and 'John Doe 2 and 3 did Y.'"  <u>Alexander v. Tilton</u>, 2009 WL

21  464486, *5 (E.D. Cal. Feb. 24, 2009).

22     **III.     State Law Claims**

23        Plaintiff's FAC asserts state law claims for medical negligence and "serious emotional

24  distress due to negligence" against defendants Dr. Williams, Dr. Sokolov, and Dr. John Doe only.

25  (ECF No. 16 at 13-20.)  Under the California Government Claims Act, the presentation of a tort

26  claim to the California Victim Compensation and Government Claims Board is a condition

27  precedent to suit against a public entity or its employees.  <u>Mangold v. California Pub. Utilities</u>

28  <u>Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995).  "The [Act] applies to state law claims wherever

1    those claims are brought, and the requirement that a plaintiff must affirmatively allege

2    compliance…applies in federal court." Cardenas v. Cnty. of Tehama, 476 F. Supp. 3d 1055,

3    1070 (E.D. Cal. 2020) (quoting Butler v. Los Angeles Cty., 617 F. Supp. 2d 994, 1001 (C.D. Cal.

4    2008)).

5           Here, plaintiff does not allege his compliance with the California Government Claims Act

6    as to either state law claim.  Accordingly, the undersigned finds that the FAC does not state any

7    cognizable state law claims.  The court will grant plaintiff leave to amend to sufficiently plead his

8    compliance with the Government Claims Act.

9    **III.    Options From Which Plaintiff Must Choose**

10          After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds plaintiff

11   has stated a potentially cognizable Fourteenth Amendment medical care claim against defendants

12   Dr. Williams, Dr. Sokolov, and Dr. John Doe (primary care physician).  However, plaintiff has

13   not pled sufficient facts to state a Fourteenth amendment claim against Sacramento County or JPS

14   supervisor John Doe.  Further, plaintiff did not state a First Amendment claim because he did not

15   plead the Doe defendants' personal involvement in the opening and reading of his legal mail.

16   Finally, plaintiff did not state any state law claims for relief because he did not plead compliance

17   with the California Government Claims Act.

18          It appears to the court that plaintiff may be able to allege facts to fix these problems.

19   Therefore, plaintiff has the option of proceeding on his cognizable claim or filing an amended

20   complaint that addresses the issue the court identified above.  After selecting an option from the

21   two options listed below, plaintiff must return the attached Notice of Election form to the court

22   within 21 days from the date of this order.

23          **Option No. 1:**  The first option available to plaintiff is to proceed immediately against

24   defendants Dr. Williams, Dr. Sokolov, and Dr. John Doe on the Fourteenth Amendment medical

25   care claim.  By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants

26   Sacramento County; John Doe, JPS supervisor; John Doe, mailroom supervisor; and mailroom

27   deputies, John Does 1-10.  The court will proceed to immediately serve the FAC and order a

28   response from defendants Dr. Williams and Dr. Sokolov.  Plaintiff is advised that the court cannot

1  order service of Dr. John Doe until plaintiff identifies Dr. John Doe through discovery and files a

2  motion to amend the complaint to include his real name.  See Mosier v. Cal. Dep't of Corr. &

3  Rehab., 2012 WL 2577524, at *3 (E.D. Cal. July 2, 2012).

4      **Option No. 2:**  The second option available to plaintiff is to file an amended complaint to

5  fix the problems described above.  If plaintiff chooses this option, the court will set a deadline in

6  a subsequent order to give plaintiff time to file an amended complaint.

7                          **MOTIONS TO APPOINT COUNSEL**

8      Before the court as plaintiff's two motions to appoint counsel.  (ECF Nos. 14 and 15.)

9  Plaintiff filed the first motion on December 30, 2024, and cites his in forma pauperis status, the

10  substantial amount of investigation and discovery the case will require, and placement at Napa

11  State Hospital as grounds to grant the motion.  (ECF No. 14 at 1-2.)  Plaintiff also states that the

12  complex issues in the case "extend far beyond plaintiff's abilities to understand due to his severe

13  mental disability" and that his involuntary medications impair his cognitive abilities.  (Id. at 2-3.)

14  In his second motion filed on January 6, 2025, plaintiff reiterates that he is not competent to

15  handle his case alone.  (ECF No. 15.)  Plaintiff subsequently submitted medical records in support

16  of his motions.  (See ECF No. 18.)

17      District courts lack authority under 28 U.S.C. § 1915 to require counsel to represent

18  indigent prisoners in section 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298

19  (1989).  In exceptional circumstances, the court may request that an attorney voluntarily represent

20  such a plaintiff.  See 28 U.S.C. § 1915(e)(1); Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.

21  1991); Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  The test for exceptional

22  circumstances requires the court to evaluate the plaintiff's likelihood of success on the merits and

23  the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal

24  issues involved.  See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986); Weygandt v.

25  Look, 718 F.2d 952, 954 (9th Cir. 1983).  Circumstances common to most prisoners, such as lack

26  of legal education and limited law library access, do not establish exceptional circumstances that

27  would warrant a request for voluntary assistance of counsel.  Wood, 900 F.2d at 1335; Riley v.

28  Franke, 340 F. Supp. 3d 783, 787 (E.D. Wis. 2018).

1    Beyond § 1915(e)(1), other sources of law may implicate a request for counsel.  For
2    example, appointed counsel may be required in a civil proceeding as an accommodation for a
3    litigant who is disabled.  See Franco-Gonzalez v. Holder, No. 10-cv-02211 DMG (DTBx), 2013
4    WL 3674492, at *3-*9 (C.D. Cal. Apr. 23, 2013) (granting summary judgment to class of
5    mentally disabled individuals in civil immigration proceedings on their request for appointed
6    representatives under the Rehabilitation Act).  Due process may also require appointment of
7    counsel in certain proceedings. See Turner v. Rogers, 564 U.S. 431, 444-45 (2011) (analyzing
8    request for appointment of counsel in civil proceeding under the Mathews v. Eldridge, 424 U.S.
9    319 (1976), procedural due process framework).
10    The court will deny plaintiff's motions.  Plaintiff's concerns regarding the amount of
11    investigation and discovery that the case will require are common to most prisoners and do not
12    constitute exceptional circumstances warranting the appointment of counsel.  Further, these
13    concerns are premature considering the case is still in the screening stage and no defendants have
14    appeared.  Plaintiff's argument that his mental disability and involuntary medications impair his
15    ability to litigate this case is well taken, but the court similarly finds them premature at this early
16    stage of the case.  However, the undersigned will deny plaitniff's motions without prejudice,
17    meaning plaintiff can request the appointment of counsel later in the case.  If plaintiff seeks
18    counsel as an accommodation for his mental disability, plaintiff shall carefully explain, to the best
19    of his ability, why the appointment of counsel in necessary for him to "meaningfully participate"
20    in his case.  See Franco-Gonzalez, 2013 WL 3674492 at *7.
21    **CONCLUSION**
22    In accordance with the above, IT IS HEREBY ORDERED that:
23    1.  Plaintiff's motions to appoint counsel (ECF Nos. 14 and 15) are denied without
24    prejudice.
25    2.  Plaintiff has stated a cognizable Fourteenth Amendment medical care claim against
26    Dr. Williams, Dr. Sokolov, and Dr. John Doe but no other cognizable claims.
27    3.  Plaintiff has the option to proceed immediately on his cognizable Fourteenth
28    Amendment medical care claim against defendants Dr. Williams, Dr. Sokolov, and Dr. John Doe
12

1   as set forth above, or to file an amended complaint.

2          4.   Within 21 days from the date of this order, plaintiff shall complete and return the

3   attached Notice of Election form notifying the court whether he wants to proceed on the screened

4   complaint or whether he wants to file an amended complaint.

5          5.   If plaintiff does not return the form, the court will assume that he is choosing to

6   proceed on the complaint as screened and will recommend dismissal without prejudice of his First

7   Amendment mail access and state law claims, as well as defendants Sacramento County; John

8   Doe, JPS supervisor; John Doe, mailroom supervisor; and mailroom deputies, John Does 1-10.

9   DATED: April 17, 2025

10

11

12                                                SEAN C. RIORDAN
                                                  UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7                         UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    JEREMIAH HANKINS,                        No.  2:24-cv-0150 TLN SCR P

11              Plaintiff,

12         v.                                  NOTICE OF ELECTION

13    SACRAMENTO COUNTY,

14              Defendants.

15

16         **Check One:**

17    _____ Plaintiff elects to proceed immediately against Dr. Williams, Dr. Sokolov, and Dr. John

18         Doe on the Fourteenth Amendment medical care claim.  By choosing this option, plaintiff

19         will be agreeing to voluntarily dismiss Sacramento County; John Doe, JPS supervisor; John

20         Doe, mailroom supervisor; and mailroom deputies, John Does 1-10.  The court will proceed

21         to serve the FAC and order a response from defendants Dr. Williams and Dr. Sokolov.  The

22         court cannot order service of Dr. John Doe until plaintiff identifies him through discovery

23         and files a motion to amend the complaint to include his real name.

24

25    _____ Plaintiff wants time to file an amended complaint.

26

27    DATED:_____

28
                                        _____
                                        Jeremiah Hankins, Plaintiff pro se
                                                    1