UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH HANKINS,<br><br>   Plaintiff,<br><br>   v.<br><br>SACRAMENTO COUNTY, et al.,<br><br>   Defendants. | No. 2:24-cv-0150 TLN SCR P<br><br><br>ORDER |

Plaintiff is a civil detainee proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff's second amended complaint ("SAC") is before the court for screening.[1] (ECF No. 22.) For the reasons set forth below, the undersigned finds that the SAC states cognizable Fourteenth Amendment inadequate medical care claims against defendants Williams, Sokolov, Malasan, and Sacramento County, but no other cognizable claims. Plaintiff will be given the opportunity to proceed on his cognizable claims or file an amended complaint.

**STATUTORY SCREENING OF PRISONER COMPLAINTS**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous,

---

[1] Because the pleadings of pro se inmates must be liberally construed, see Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010), the undersigned accepts plaintiff's signed cover letter (ECF No. 22 at 1) as compliance with Federal Rule of Civil Procedure 11(a)'s signature requirement.

1

1 malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief
2 from a defendant who is immune from such relief." Id. § 1915A(b).  A claim is legally frivolous
3 when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325
4 (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless
5 legal theory or factual contentions that are baseless. Neitzke, 490 U.S. at 327.  The critical
6 inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and
7 factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

8   In order to avoid dismissal for failure to state a claim a complaint must contain more than
9 "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause
10 of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words,
11 "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
12 statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the
13 court can grant relief has facial plausibility. Twombly, 550 U.S. at 570.  "A claim has facial
14 plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
15 inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When
16 considering whether a complaint states a claim, the court must accept the allegations as true,
17 Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most
18 favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**FACTUAL ALLEGATIONS OF THE SAC**

20   Plaintiff was at all relevant times a civil detainee in Sacramento County Jail ("SCJ").
21 (ECF No. 22 at 2.)  The SAC names the following defendants (all individuals are sued in their
22 individual capacities): Sacramento County; Dr. Williams, a psychiatrist for Jail Psychiatric
23 Services ("JPS"); Dr. Sokolov, a psychiatrist for JPS; Delgado, a licensed clinical social worker
24 ("LSCW") for JPS; J. Roof, JPS Director; Dr. Malasan, a primary care physician at SCJ; John
25 Does 1-10, mailroom deputies; and Hancock, the SCJ mailroom supervisor. (Id. at 2-4.)

26   **I.    Allegations Concerning Zyprexa Prescription**
27   Dr. Williams prescribed plaintiff the anti-psychotic Zyprexa around 2015. (ECF No. 22 at
28 5.)  Zyprexa has been subject to lawsuits since 2003 for causing diabetes, gynecomastia, and

2

1  other serious side effects. (Id.) The F.D.A. required Zyprexa's manufacturer to put a "Black
2  Box" warning on it. Defendants Williams and Sokolov knew or should have known it was a bad
3  drug in 2015. (Id.) Plaintiff told Dr. Williams that he did not want to take any anti-psychotics
4  that cause gynecomastia. Dr. Williams told plaintiff the only side effect was "dry mouth." (Id.)
5       Defendant Dr. Sokolov met with plaintiff in 2015 before Dr. Williams prescribed
6  Zyprexa. Dr. Sokolov put plaintiff on Zyprexa without telling him the side effects or offering a
7  side effect sheet. (ECF No. 22 at 5-6.) Because Zyprexa causes diabetes and hyper-
8  prolactinemia, the standard practice for psychiatrists is to order quarterly blood draws. (Id. at 6.)
9  Rather than monitor plaintiff's reaction to Zyprexa, defendants Dr. Williams and Dr. Sokolov
10 recklessly increased plaintiff's dosage over the next four and a half years. (Id.)
11      In 2017, plaintiff wrote to medical complaining about bilateral swelling and pain in his
12 nipples. (ECF No. 22 at 6.) Defendant Dr. Malasan sent plaintiff for an outpatient mammogram.
13 (Id.) The mammogram confirmed bilateral, severe gynecomastia. (Id. at 7.) Despite the positive
14 mammogram and plaintiff submitting multiple complaints about pain in his breast, Dr. Malasan
15 did not follow up, order blood work, or investigate plaintiff's injury. (Id.) In or about 2019,
16 plaintiff began experiencing swelling in his legs and feet, an indicator of diabetes. (Id.) A blood
17 draw and test showed plaintiff to have diabetes. (Id.) SCJ did not investigate the cause.
18      Jessica, an LCSW, printed out a side effect sheet for Zypreza in 2020. (ECF No. 22 at 7.)
19 The side effects were the same as the last drug plaintiff stopped taking. He would have refused
20 Zyprexa if he had known. (Id.) Plaintiff filed a grievance about his claims in 2020. Defendant
21 Delgado, an LCSW, posed as the JPS supervisor and presented plaintiff with an investigation
22 summary. (Id. at 8.) Defendant Delgado presented facts that were not in the report to gain
23 plaintiff's trust. Plaintiff could not read the report because they were social distancing six feet
24 apart. (Id.) Defendant Delgado refused plaintiff's request for the clipboard with the report. (Id.)
25 Plaintiff was coerced into signing the report. (Id.) Delgado told plaintiff he had a case against
26 the drug manufacturer but not JPS. (Id. at 9.) Her intention was to discredit plaintiff at trial. (Id.)
27      Plaintiff alleges defendants Delgado and Roof extended the time it takes to answer
28 grievances and appeals so that that the statute of limitations ran out. (ECF No. 22 at 9.) Roof

allowed staff to produce "pitch black" illegible copies of plaintiff's complaints and appeals to sabotage plaintiff's case against JPS. This was for the purpose of cheating plaintiff out of his constitutional right to access the courts in a timely manner. (Id. at 9-10.) Delgado and Roof knew plaintiff was filing a lawsuit because he stated so in his grievance. (Id. at 11.)

## II. Allegations Concerning Legal Mail

In or around November 2021, plaintiff gave nondefendant Perez legal mail addressed to Ben Crump, a well know civil rights attorney. (ECF No. 22 at 12.) In or around December 2021, the letter came back marked "Return to Sender." The envelope was opened even though it was marked "legal mail" on both sides. (Id.) Plaintiff alleges defendant Doe mailroom deputies opened and read his mail. (Id.) Per SCJ protocol, a detainee opens the envelope so deputies can verify that it does not contain contraband. Once the deputy verifies that the legal mail does not contain contraband, the detainee seals the legal mail in the deputy's presence. The deputy then signs the back of the envelope with his/her initials and bade number. (Id.) No deputy or SCJ staff is authorized to open a detainees' outgoing or incoming legal mail outside the detainee's presence. (Id.) Plaintiff alleges he was stopped from contacting his potential attorney. (Id.)

## III. Claims for Relief

The SAC rises four causes of action: (1) violation of plaintiff's right to adequate medical care under the Fourteenth Amendment; (2) violation of plaintiff's right to access the courts under the First Amendment; (3) state law medical negligence; and (4) state law "serious emotional distress due to negligence." (ECF No. 22 at 13-22.) Regarding his state law claims, plaintiff alleges that he submitted a claim with ORIM in 2024. He never received a response. (Id. at 13.) Plaintiff seeks compensatory and punitive damages in the amount of five million dollars. He also requests an injunction ordering the Sacramento County Jail to undergo "major policy reform regarding their grievance, patient treatment care, and informed consent policies." (Id. at 1.)

## LEGAL STANDARDS

### I. 42 U.S.C. § 1983

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress violations of "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity,

4

including a municipality, acting under the color of state law. 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) a defendant acting under color of state law (2) deprived plaintiff of rights secured by the Constitution or federal statutes. Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021).

Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. Monell v. Dep't of Social Services, 436 U.S. 585 at 691, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Municipalities are considered "persons" under 42 U.S.C. § 1983 and therefore may be liable for causing a constitutional deprivation. Monell, 436 U.S. 658, 690 (1978); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

To properly plead a Monell claim, plaintiff must show that the government "had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [plaintiff] suffered." AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631, 636 (9th Cir. 2012) (quotation marks and citation omitted). Plaintiff must also show that the policy or custom of the government "reflects deliberate indifference" to plaintiff's constitutional rights. Castro v. County of Los Angeles, 833 F.3d 1060, 1073 (9th Cir. 2016) (quotation marks and citation omitted). Unless the challenged policy is in writing, the municipal policy at issue must be the result of a "'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & Cnty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2002) (quotation omitted).

## II.     Linkage

Section 1983 requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell, 436 U.S. at 694; Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Plaintiff may demonstrate that connection by alleging facts showing: (1) a defendant's "personal involvement in the constitutional

deprivation," or (2) that a defendant set "in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which [the defendant] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (quotation marks and citation omitted).

## DISCUSSION

### I. Fourteenth Amendment Inadequate Medical Care

#### A. Legal Standard

When filed by individuals in pretrial criminal custody, claims of violations of the right to adequate medical care proceed under the Fourteenth Amendment and "must be evaluated under an objective deliberate indifference standard." Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting Castro, 833 F.3d at 1070.) The elements of a pretrial detainee's Fourteenth Amendment medical care claim are:

> the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Id. "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." Id. (internal quotation omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent – something akin to reckless disregard." (Id. (internal quotation omitted).)

Further, the Ninth Circuit has held that "the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise those rights intelligently." Benson v. Terhune, 304 F.3d 874, 884 (9th Cir. 2002) (citations omitted). In White v. Napolean, which the Ninth Circuit cited favorably in Benson, 304 F.3d at 884, the Third Circuit held that "[p]risoners have a right to such information as is reasonably necessary to make an informed decision to

6

1  accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative
2  treatments that can be made available in a prison setting." 897 F.2d 103, 113 (3d Cir. 1990).

### B. Analysis

Plaintiff's Fourteenth Amendment inadequate medical care claim names defendants Dr. Williams, Dr. Sokolov, J. Roof, Dr. Malasan, and Sacramento County. (ECF No. 16 at 8-12.)

For screening purposes only, plaintiff has stated a cognizable Fourteenth Amendment inadequate medical care claim against defendants Dr. Williams and Dr. Sokolov. Liberally construed, the SAC alleges that defendants made intentional decisions regarding plaintiff's care that put him at risk of gynecomastia and/or diabetes. Plaintiff has also alleged sufficient facts to support each defendant's objective unreasonableness in not appreciating those risks. Dr. Williams and Dr. Sokolov both failed inform plaintiff of the side effects of Zyprexa despite his repeated requests and increased his Zyprexa dosage over the next 4½ to 5 years.

Plaintiff has not stated a claim against defendant Roof. A supervisor can be held liable in his individual capacity under § 1983 only if (1) the supervisor personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr, 652 F.3d at 1207. Here, the SAC seeks to hold Roof liable solely for vague, supervisory actions. (See, e.g., ECF No. 22 at 10 ("Roof allows psychiatrists to give the detainees at SCJ below standard treatment[.]"); id. at 11 (he "directed his staff how to interact with plaintiff" and "knew what was going on"); id. at 15 (citing Roof's "omissive or deficient policy for ensuring that [his] subordinates are adhering to acceptable standards of medical care[.]").) Because the SAC does not allege Roof's personal participation in any specific events and his involvement is described in only a conclusory fashion, this claim cannot survive screening.

Next, plaintiff has stated a cognizable inadequate medical care claim against defendant Dr. Malasan. Plaintiff alleges that Dr. Malasan's failures to both treat him following his positive mammogram and investigate the causes of his severe gynecomastia left him with a "life long injury." (ECF No. 22 at 16.) At the screening stage, this is sufficient to establish Dr. Malasan's objectively deliberate treatment of plaintiff's medical needs.

Finally, for screening purposes only, plaintiff has stated a cognizable Monell claim against Sacramento County. Plaintiff identifies the following longstanding customs and practices as the moving force behind the alleged constitutional violations regarding the administration of Zyprexa:

> [Sacramento County] provides minimum care there [sic] protocol is not [to] consult detainees about risks, education, facts, side effects and history about all drugs they prescribe. They have a culture and history of blindly prescribing anti-psychotic medicine without cross referencing medical records.

(ECF No. 22 at 17.) However, to the extent plaintiff seeks to hold the County and/or defendant Roof liable for deficient grievance procedures, he has not stated a cognizable due process claim. Although state law can create a liberty interest, see Sandin v. Conner, 515 U.S. 472, 483-84 (1995), "inmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez, 334 F.3d at 860 (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988)); see also Hernandez v. Cate, 918 F. Supp. 2d 987, 1009 (C.D. Cal. 2013) (dismissing plaintiff's due process claim challenging the adequacy of the prison's administrative appeal procedure and the disposition of his appeals).

Accordingly, the SAC states a cognizable Fourteenth Amendment inadequate medical care claim against defendants Williams, Sokolov, Malasan, and Sacramento County, only.

**II.     First Amendment Legal Mail and Court Access**

**A.  Legal Standard**

Under the First Amendment, prisoners have a right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, a prison may adopt regulations or practices for inmate mail which limit a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" Witherow, 52 F.3d at 265 (quoting Thornburgh v. Abbott, 490 U.S. 401, 412 (1989)).

Courts have also afforded greater protection to legal mail than non-legal mail. See Thornburgh, 490 U.S. at 413. In the Ninth Circuit, prisoners have a "protected First Amendment

8

interest in having properly marked, confidential legal mail opened only in their presence." <u>Hayes v. Idaho Corr. Ctr.</u>, 849 F.3d 1204, 1211 (9th Cir. 2017). However, only mail from plaintiff's lawyer or prospective lawyer is protected. <u>See</u> <u>Nordstrom v. Ryan</u>, 762 F.3d 903, 909 (9th Cir. 2014) (describing the right at issue as the right to be free from "prison officials reading mail between a prisoner and his lawyer"); <u>Keenan v. Hall</u>, 83 F.3d 1083, 1094 (9th Cir. 1996) ("mail from the courts, as contrasted with mail from a prisoner's lawyer, is not legal mail"). As to communication with counsel, a plaintiff need not "'show any actual injury beyond the free speech violation itself to state a constitutional claim.'" <u>Hayes</u>, 849 F.3d at 1212 (quotation omitted).

A prison's interference with legal mail may also violate an inmate's right of access to the courts, which is protected by the First Amendment's right to petition the government and the due process clause of the Fourteenth Amendment. <u>See</u> <u>Snyder v. Nolen</u>, 380 F.3d 279, 290-291 (7th Cir. 2004) (discussing the development of cases concerning a prisoner's right of access to the courts). Prison officials may not actively interfere with an inmate's right to litigate. <u>See</u> <u>Silva v. Vittorio</u>, 658 F.3d 1090, 1103 (9th Cir. 2011), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Richey v. Dahne</u>, 807 F.3d 1202, 1209 n. 6 (9th Cir. 2015). In order to state a claim for the denial of access to the courts, a plaintiff must allege he suffered an actual injury, which is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996).

**B. Analysis**

Plaintiff's SAC asserts First Amendment claims against defendants Does 1-10, mailroom supervisor Hancock, J. Roof, and L. Delgado.

The SAC's First Amendment claims against Does 1-10 fail for inadequate linkage. As explained in the last screening order, while the use of Doe defendants is permitted, the complaint must still allege facts "t[ying] that defendant's actions to the specific harms alleged to have been caused to Plaintiff." <u>Zepeda v. Sullivan</u>, No. 1:06-cv-1391 AWI GSA PC, 2009 WL 1288235, at *3 (E.D. Cal. May 7, 2009). The SAC's conclusory allegation that the Doe defendants collectively opened plaintiff's mail (ECF No. 22 at 17) is insufficient because it does not describe what each individual Doe did to violate his rights. <u>See</u> <u>Twombly</u>, 550 U.S. at 555 (complaint

9

must give defendants "fair notice of what the … claim is and the grounds upon which it rests").

Next, the SAC's First Amendment supervisory claim against defendant Hancock fails for the same reasons as its Fourteenth Amendment claim against defendant Roof: Plaintiff has not identified Hancock's personal participation in any of the alleged violations of his rights. Instead, plaintiff offers conclusory allegations regarding Hancock's deficient supervision:

> …Hancock violated Plaintiff's rights under the First Amendment by acquiescing, ratifying, or condoning a policy or custom that sanctions Defendant SCJ mail-room deputies to contravene the United States Constitution regarding opening and/or reading SCJ detainee's legal mail[.]

(ECF No. 22 at 17-18; see also id. at 18 ("Hancock protected his mail room deputies by allowing them to open up confidential civil legal mail outside of Plaintiff's presence he condoned it).) Further, plaintiff cannot establish Hancock's supervisory liability when the alleged unlawful actions of the subordinate Does are themselves insufficient to survive screening. Puente v. City of Phoenix, 123 F. 4th 1035, 1064 (9th Cir. 2024) (there can be no … supervisorial liability in the absence of an underlying constitutional violation).

Finally, plaintiff alleges defendants Roof and Delgado violated the First Amendment when they extended the time to answer his grievances. The extension, the SAC alleges, "caused Plaintiff to miss [the] state tort claim deadline because Plaintiff had to exhaust appeals process." (ECF No. 22 at 18.) The SAC offers no support for plaintiff's belief that he must exhaust prison appeals before filing a state tort claim. To the contrary, "[t]he obligation to comply with the Government Claims Act is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act." Kilgore v. Clavijo, No. 17-CV-4786 JST, 2024 WL 2818858, at *29 n. 10 (N.D. Cal. June 3, 2024) (citing Parthemore v. Col, 221 Cal. App. 4th 1372, 1376 (2013)); see also Walker v. California Dep't Corr., No. 2:09-cv-00569 WBS KJN P, 2012 WL 591954, at *8 (E.D. Cal. Feb. 22, 2012) (finding no requirement that prisoner exhaust his administrative remedies prior to filing state tort claim), vacated on other grounds, 2012 WL 6726700 (E.D. Cal. Dec. 26, 2012). A fellow magistrate judge of this District found:

> [T]he prison's inmate appeals process and the Government Claims Act process are separate processes and there is no support for a finding that the allegedly improper cancellation of Plaintiff's inmate appeal had any effect whatsoever on

his ability to timely present his Government Claims Act claim. Martinez v. Tilton, No. 1:10-CV-1501 SKO, 2013 WL 5670869, at *3 (E.D. Cal. Oct. 16, 2013) (citing Castaneda v. Dep't of Corr. and Rehabilitation, 212 Cal.App.4th 1051, 1064 (Cal. Ct. App.2013)). Because the two processes are independent, plaintiff's alleged injury – i.e., missing his chance to file a state tort claim due to defendants' extending the period to answer his grievance – is implausible. Accordingly, plaintiff has failed to state an access to court claim against defendants Roof and Delgado. Accordingly, the undersigned finds plaintiff has not alleged any cognizable First Amendment claims.

### III. State Law Claims

#### A. Legal Standard

The Government Claims Act, Cal. Gov't Code §§ 810 et seq. ("GCA"), "requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part." Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). "[A] plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint is subject to a general demurrer for failure to state facts sufficient to constitute a cause of action." Cardenas v. Cnty. of Tehama, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020) (quoting State of California v. Superior Court, 32 Cal. 4th 1234, 1243 (2004)).

#### B. Analysis

In the previous screening order, the undersigned determined plaintiff failed to state any state law claims because he did not allege compliance with the GCA. (ECF No. 19 at 9-10.) Plaintiff now alleges that he submitted a letter to ORIM in 2024 but never heard back.[2] (ECF No. 22 at 13.) Because plaintiff alleges that he presented the claim to the wrong public entity, he has again failed to plead compliance with the GCA.

Under the GCA, "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented ... until a written claim therefor has been **presented to the public entity** and has been acted upon by the [Government Claims] board,

---

[2] Plaintiff does not square this fact with his other claim that he missed the tort claim deadline.

or has been deemed to have been rejected by the board[.]" Cal. Gov. Code § 945.4 (emphasis added). In other words, plaintiff here was required to present a claim to Sacramento County. He instead allegedly sent the claim to ORIM (i.e., the Office of Risk and Insurance Management), a state agency within the Department of General Services that accepts tort claims on behalf of the state. See Cal. Civ. Code § 905.2(c).

When determining compliance with the GCA, courts apply a substantial compliance standard:

> The California claims statutes are designed to protect governmental agencies from stale and fraudulent claims, provide an opportunity for timely investigation and encourage settling meritorious claims. Since the claims statutes should not be used as traps for the unwary when their underlying purposes have been satisfied, courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the [GCA].

Williams v. City of Fresno, No. CV F 07-1386 LJO SMS, 2007 WL 2902973, at *5 (E.D. Cal. Oct. 2, 2007) (citing Johnson v. San Diego Unified School Dist., 217 Cal.App.3d 692, 697 (Cal. Ct. App. 1990)). However, the "doctrine of substantial compliance is not applicable to a claim which is addressed to the wrong entity." Id. (dismissing municipal defendants because "[t]he State of California, with whom plaintiff filed his state claims form, is a different public entity than either the City or County"). Here, because plaintiff alleges only that he addressed his tort claim to the wrong public entity, the undersigned is unable to find that he has substantially complied with the GCA. Accordingly, the SAC's state law claims fail for noncompliance with the GCA.

### IV. Options From Which to Choose

After conducting the screening required by 28 U.S.C. § 1915A(a), the undersigned finds that the SAC states a cognizable Fourteenth Amendment inadequate medical care claim against defendants Williams, Sokolov, Malasan, and Sacramento County, but no other cognizable claims. In particular, plaintiff has not pled any cognizable First Amendment claims or alleged his substantial compliance with the California Government Claims Act.

It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of proceeding on his cognizable claim or filing an amended

complaint that addresses the issue the court identified above. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**Option No. 1:** The first option available to plaintiff is to proceed immediately against defendants Dr. Williams, Dr. Sokolov, Dr. Malasan, and the County of Sacramento on the Fourteenth Amendment medical care claim. By choosing this option, plaintiff will be agreeing to voluntarily dismiss the remaining defendants.

**Option No. 2:** The second option available to plaintiff is to file an amended complaint to fix the problems described above. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff has stated a cognizable Fourteenth Amendment medical care claim against Dr. Williams, Dr. Sokolov, Dr. Malasan, and the County of Sacramento, but no other cognizable claims.

2. Plaintiff has the option to proceed immediately on his cognizable Fourteenth Amendment medical care claims, or to file an amended complaint.

3. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

4. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of his First Amendment legal mail/court access and state law claims, as well as defendants Delgado, Roof, John Does 1-10, and Hancock.

DATED: August 19, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

13

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH HANKINS,<br><br>             Plaintiff,<br><br>     v.<br><br>SACRAMENTO COUNTY,<br><br>             Defendants. | No.  2:24-cv-0150 TLN SCR P<br><br><br>NOTICE OF ELECTION |

**Check One:**

\_\_\_\_\_  Plaintiff elects to proceed immediately against Dr. Williams, Dr. Sokolov, Dr. Malasan, and the County of Sacramento on the Fourteenth Amendment inadequate medical care claim. By choosing this option, plaintiff will be agreeing to voluntarily dismiss the remaining defendants.  The court will proceed to serve the SAC and order a response from defendants Dr. Williams, Dr. Sokolov, Dr. Malasan, and County of Sacramento.

\_\_\_\_\_  Plaintiff wants time to file an amended complaint.

DATED:_____

                                                                                          _____
                                                                                          Jeremiah Hankins, Plaintiff pro se

1